J-S40029-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN RE: ADOPTION OF B.S. | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| APPEAL OF: F.S., JR. | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 494 WDA 2019 |

Appeal from the Order Entered April 1, 2019
In the Court of Common Pleas of Fayette County Orphans' Court at
No(s):  71 ADOPT 2018

BEFORE:   BENDER, P.J.E., McLAUGHLIN, J., and PELLEGRINI*, J.

MEMORANDUM BY McLAUGHLIN, J.:          **FILED SEPTEMBER 13, 2019**

F.S., Jr. ("Father") appeals from the decree entered on April 1, 2019, which terminated his parental rights as to his one-year-old son, B.S. ("Child"). Father's counsel has filed an **Anders**[1] brief and a petition to withdraw as counsel. Upon review, we grant counsel's petition to withdraw and affirm the decree.

The Child was born on February 6, 2018. N.T., 3/19/19, at 11. The Child is the natural child of Father and J.J. ("Mother"). **Id.** The Fayette County Children and Youth Services Agency ("CYS") became involved when the Child was two months old due to Mother's drug dependency issues and concerns for her housing. **Id.** at 11-12. The Child was placed in a foster home on April 5,

_____

* Retired Senior Judge assigned to the Superior Court.

[1] **Anders v. California**, 386 U.S. 738 (1967), and **Commonwealth v. Santiago**, 978 A.2d 349 (Pa. 2009).

2018, and was adjudicated dependent on May 3, 2018. *Id.* at 13. The Child has remained in the same foster home continuously from April 5, 2018 to the present time. *Id.*

CYS filed a Petition for Involuntary Termination on December 11, 2018. A hearing was held on the Petition on March 19, 2019. At the hearing, Jessica Roberts, the CYS caseworker assigned to the case, testified that Father's Family Service Plan ("FSP") goals were to: obtain drug and alcohol treatment, undergo a mental health evaluation, consistently visit with the Child, maintain suitable housing, attend parenting classes, and cooperate with CYS. *Id.* at 14-15. Ms. Roberts stated that Father never signed the FSP. *Id*. at 16. Ms. Roberts further testified that Father had not visited the Child at all since the Child was placed into foster care on April 5, 2018. *Id.* at 18. She also stated that Father failed to complete any of his other FSP goals. *Id.* at 23. Ms. Roberts acknowledged that Father was incarcerated at some point during the dependency action but she did not know long he was incarcerated. *Id.* at 27. Ms. Roberts recommended that it was in the best interest of the Child for Father's parental rights to be terminated and for the Child to be adopted by his foster parents. *Id.* at 24.

Father testified at the termination hearing and admitted that he had not seen the Child since the Child was placed into foster care. *Id.* at 39-40. Father testified that he had not made any attempts to visit with the Child because he believed that this case only involved Mother and "the case was to deal with her." *Id.* at 40. He also stated that it was because "I wasn't even close to

being stable myself." *Id.* at 41. Father agreed that he was offered visits and that the visitation location was a few blocks away from his current residence so transportation was not an issue. *Id.* at 47. Father admitted that he currently has a drug problem and has been addicted to cocaine since he was 19 years old, or for approximately 23 years. *Id.* at 34. He also testified that he was not receiving drug and alcohol treatment, had not had a mental health assessment, failed to attend parenting classes, and had not maintained contact with CYS. *Id.* at 37, 38, 47-48. In terms of housing, Father stated that he had been renting a room in a house on and off for approximately the last three months. *Id.* at 37-38. Father also testified that he was incarcerated several times after the Child's birth but he was unsure of the dates of his incarceration. *Id.* at 41-42.

At the end of the hearing, the trial court terminated Father's parental rights as to Child.[2] This timely appeal followed.

Counsel for Father raises one issue in his ***Anders*** brief:

> Did the lower court abuse its discretion in terminating the parental rights of the natural father, F.S., as Fayette County Children and Youth Services failed to present sufficient evidence to sustain its burden of proof?

***Anders*** Brief, at 3.

Before reviewing the merits of this appeal, we must first determine whether counsel has satisfied the necessary requirements for withdrawing as

---

[2] The trial court also involuntarily terminated Mother's parental rights. Mother is not involved in this appeal.

- 3 -

counsel. ***See Commonwealth v. Goodwin***, 928 A.2d 287, 290 (Pa.Super. 2007) (*en banc*) (stating that "[w]hen faced with a purported ***Anders*** brief, this Court may not review the merits of any possible underlying issues without first examining counsel's request to withdraw"). In order to withdraw pursuant to ***Anders***, counsel must:

> 1) petition the court for leave to withdraw stating that, after making a conscientious examination of the record, counsel has determined that the appeal would be frivolous; 2) furnish a copy of the brief to the defendant; and 3) advise the defendant that he or she has the right to retain private counsel or raise additional arguments that the defendant deems worthy of the court's attention.

***Commonwealth v. Cartrette***, 83 A.3d 1030, 1032 (Pa.Super. 2013) (*en banc*). Further, in the ***Anders*** brief, counsel seeking to withdraw must:

> (1) provide a summary of the procedural history and facts, with citations to the record; (2) refer to anything in the record that counsel believes arguably supports the appeal; (3) set forth counsel's conclusion that the appeal is frivolous; and (4) state counsel's reasons for concluding that the appeal is frivolous. Counsel should articulate the relevant facts of record, controlling case law, and/or statutes on point that have led to the conclusion that the appeal is frivolous.

***Commonwealth v. Santiago***, 978 A.2d 349, 361 (Pa. 2009). If counsel meets all of the above obligations, "it then becomes the responsibility of the reviewing court to make a full examination of the proceedings and make an independent judgment to decide whether the appeal is in fact wholly frivolous." ***Id.*** at 355, n.5 (quoting ***Commonwealth v. McClendon***, 434 A.2d 1185, 1187 (Pa. 1981)).

Instantly, we find that counsel has complied with all of the above technical requirements. In his **Anders** brief, counsel has provided a summary of the procedural history and facts of the case with citations to the record. Further, counsel's brief includes an issue that could arguably support the appeal, and counsel's assessment of why that issue is frivolous, with citations to the record and relevant legal authority. In addition, counsel served Father a copy of the **Anders** brief and advised him of his right to proceed *pro se* or retain a private attorney to raise any additional points he deemed worthy of this court's review. Petition to Withdraw, 5/17/19, at ¶ 10. Father has not responded to counsel's petition to withdraw. As we find the technical requirements of **Anders** and **Santiago** are met, we will proceed to the issue on appeal.

We review an order involuntarily terminating parental rights for an abuse of discretion. **In re G.M.S.**, 193 A.3d 395, 399 (Pa.Super. 2018) (citation omitted). When we review termination of parental rights cases, we "accept the findings of fact and credibility determinations of the trial court if they are supported by the record." **In re T.S.M.**, 71 A.3d 251, 267 (Pa. 2013), (quoting **In re Adoption of S.P.**, 47 A.3d 817, 826 (Pa. 2012)). "If the factual findings have support in the record, we then determine if the trial court committed an error of law or abuse of discretion." **In re Adoption of K.C.**, 199 A.3d 470, 473 (Pa.Super. 2018). A trial court decision may be reversed for an abuse of discretion "only upon demonstration of manifest

unreasonableness, partiality, prejudice, bias, or ill-will." *In re Adoption of S.P.*, 47 A.3d at 826.

Our Supreme Court has explained the reasons for applying an abuse of discretion standard of review in termination of parental rights cases:

> [U]nlike trial courts, appellate courts are not equipped to make the fact-specific determinations on a cold record, where the trial judges are observing the parties during the relevant hearing and often presiding over numerous other hearings regarding the child and parents. Therefore, even where the facts could support an opposite result, as is often the case in dependency and termination cases, an appellate court must resist the urge to second guess the trial court and impose its own credibility determinations and judgment; instead we must defer to the trial judges so long as the factual findings are supported by the record and the court's legal conclusions are not the result of an error of law or an abuse of discretion.

*Id.* at 826-27 (citations omitted).

A party seeking to terminate parental rights has the burden of establishing grounds for termination by clear and convincing evidence. *In re Adoption of K.C.*, 199 A.3d at 473. Clear and convincing evidence means evidence "that is so clear, direct, weighty, and convincing as to enable the trier of fact to come to a clear conviction, without hesitation, of the truth of the precise facts in issue." *Id.* (internal quotation marks and citation omitted in *In re Adoption of K.C.*).

Termination of parental rights is controlled by section 2511 of the Adoption Act. *In re L.M.*, 923 A.2d 505, 511 (Pa.Super. 2007). Under section

- 6 -

2511, the trial court must engage in a bifurcated analysis prior to terminating parental rights:

> Initially, the focus is on the conduct of the parent. The party seeking termination must prove by clear and convincing evidence that the parent's conduct satisfies the statutory grounds for termination delineated in Section 2511(a). Only if the court determines that the parent's conduct warrants termination of his or her parental rights does the court engage in the second part of the analysis pursuant to Section 2511(b): determination of the needs and welfare of the child under the standard of best interests of the child. One major aspect of the needs and welfare analysis concerns the nature and status of the emotional bond between parent and child, with close attention paid to the effect on the child of permanently severing any such bond.

*Id.* (citations omitted).

In the present case, the trial court terminated Father's parental rights pursuant to 23 Pa.C.S.A. § 2511(a)(1), (2), (5) and (6) and 2511(b) of the Adoption Act. In order to affirm the termination of parental rights, this Court need only agree with the trial court's decision as to any one subsection of section 2511(a), as well as section 2511(b). *In re B.L.W.*, 843 A.2d 380, 384 (Pa.Super. 2004) (*en banc*). We focus our attention on whether the trial court abused its discretion by terminating Father's parental rights pursuant to section 2511(a)(1), which provides that a parent's rights to a child may be terminated if:

> [t]he parent by conduct continuing for a period of at least six months immediately preceding the filing of the petition either has evidenced a settled purpose of relinquishing parental claim to a child or has refused or failed to perform parental duties.

- 7 -

23 Pa.C.S.A. § 2511(a)(1).

Pursuant to section 2511(a)(1), "the moving party must produce clear and convincing evidence of conduct, sustained for at least the six months prior to the filing of the termination petition, which reveals a settled intent to relinquish parental claim to a child or a refusal or failure to perform parental duties." **In re Z.S.W.**, 946 A.2d 726, 730 (Pa.Super. 2008). A parental obligation is a "positive duty which requires affirmative performance" and "cannot be met by a merely passive interest in the development of the child." **In re C.M.S.**, 832 A.2d 457, 462 (Pa.Super. 2003) (citation omitted). Indeed,

> [p]arental duty requires that the parent act affirmatively with good faith interest and effort, and not yield to every problem, in order to maintain the parent-child relationship to the best of his or her ability, even in difficult circumstances. A parent must utilize all available resources to preserve the parental relationship, and must exercise reasonable firmness in resisting obstacles placed in the path of maintaining the parent-child relationship. Parental rights are not preserved by waiting for a more suitable or convenient time to perform one's parental responsibilities while others provide the child with his or her physical and emotional needs.

**In re B.,N.M.**, 856 A.2d 847, 855 (Pa.Super. 2004) (citations omitted).

In the instant case, since the Petition for Involuntary Termination was filed on December 11, 2018, the six-month period prior to the filing of the Petition began on June 11, 2018. The trial court found that Father made absolutely no efforts to perform any parental duties since the time that the Child was placed into foster care on April 5, 2018.

Upon review, we find that the record clearly supports the findings of the trial court. At the termination hearing, the CYS caseworker testified that Father had not seen the Child at all since the Child was placed in foster care on April 5, 2018. N.T., 3/19/19, at 18. Moreover, Father himself admitted at the termination hearing that he had no contact with the Child since he was placed into care and had made no attempts to visit the Child. *Id.* at 39-40. Father further agreed that visits were offered to him but that he had not attended any visits with the Child, despite the fact that the visitation location was only a few blocks away from his current residence. *Id.* at 47. In addition, Father admitted that he still has a drug problem and has been addicted to cocaine for 23 years. *Id.* at 34. Father further conceded that he is not receiving drug and alcohol treatment, failed to attend mental health treatment, failed to attend parenting classes, and has not maintained contact with CYS. *Id.* at 37, 38, 47-48. Father also acknowledged that he wasn't stable during the Child's dependency, stating, "Well it was pretty much I was homeless, bouncin' [sic] from house to house." *Id.* at 41, 49. In sum, Father has made no attempts to perform any parental duties or work toward reunification with the Child.

To the extent that Father contends that he was unable to perform his parental duties due to being in and out of prison several times since the Child's birth, it is well-established that "a parent's responsibilities are not tolled during incarceration." *In re B.,N.M.*, 856 A.2d at 855. Indeed, a parent who is incarcerated "is expected to utilize all available resources to foster a

continuing close relationship with his or her children." *Id.* The record is devoid of any evidence that Father attempted to foster a relationship with the Child while he was incarcerated. Since Father failed to perform *any* parental duties for the Child for at least six months prior to the filing of the termination petition, we discern no abuse of discretion.

Having determined that CYS proved by clear and convincing evidence the requirements of section 2511(a)(1), we next turn to the second part of the analysis pursuant to section 2511(b): determination of the needs and welfare of the child under the standard of best interests of the child. Section 2511(b) provides:

> The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S.A. § 2511(b).

The focus under section 2511(b) is not on the parent, but on the child. *In re Adoption of R.J.S.*, 901 A.2d 502, 508 (Pa.Super. 2006). Pursuant to section 2511(b), the trial court must determine "whether termination of parental rights would best serve the developmental, physical and emotional needs and welfare of the child." *In re C.M.S.*, 884 A.2d 1284, 1286 (Pa.Super.

- 10 -

2005). This Court has explained that "[i]ntangibles such as love, comfort, security, and stability are involved in the inquiry into [the] needs and welfare of the child." *Id.* at 1287. The trial court "must also discern the nature and status of the parent-child bond, with utmost attention to the effect on the child of permanently severing that bond." *Id.* Importantly, "[t]he mere existence of an emotional bond does not preclude the termination of parental rights." *In re N.A.M.*, 33 A.3d 95, 103 (Pa.Super. 2011). Instead, the trial court "must examine the status of the bond to determine whether its termination would destroy an existing, necessary and beneficial relationship." *Id.* (citation and quotation omitted). Further, "[c]ommon sense dictates that courts considering termination must also consider whether the children are in a pre-adoptive home and whether they have a bond with their foster parents." *In re T.S.M.*, 71 A.3d 251, 268 (Pa. 2013).

Here, the trial court found that terminating Father's parental rights was in the best interest of the Child in that it provided permanency for the Child and would best serve the needs and welfare of the Child. N.T., 3/19/19, at 64; Trial Court Opinion, 5/1/19, at 3. The court further concluded that Father failed to maintain a bond with the Child as he has not seen the Child since the Child's placement on April 5, 2018. *Id.* In contrast, the court found that the Child has a bond with the foster parents and the foster parents desire to adopt the Child. N.T., 3/19/19, at 63-64; Trial Court Opinion, 5/1/19, at 3.

Once again, our review supports the trial court's findings. It was undisputed that Father has had no contact with the Child since the Child was

approximately two months old, or for almost one year at the time of the termination hearing. N.T., 3/19/19, at 18, 39-40. We agree with the trial court's finding that there is not an emotional bond between Father and the Child due to Father's failure to have any contact with the Child. The CYS worker testified that the Child has lived continuously with the same foster parents since he was approximately two months old. *Id.* at 13. The CYS worker stated that the Child is currently thriving in the foster home and is "very bonded with the foster family and their family." *Id.* at 24. The trial court found that the foster parents are willing and able to provide the Child with the love, comfort, permanence, and stability that he deserves. We agree with this finding. Accordingly, we conclude that the record supports the trial court's decision that CYS proved by clear and convincing evidence that termination of Father's parental rights was in the Child's best interest.

In sum, we determine that the issue raised in counsel's ***Anders*** brief is wholly frivolous. Further, after an independent review of the record, we conclude that no other issue of arguable merit exists. Therefore, we grant counsel's petition to withdraw. Having determined that the issue raised on appeal is wholly frivolous, we affirm the decree terminating Father's parental rights.

Petition to withdraw as counsel granted. Decree affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date:  9/13/2019